## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| ADRIENNE L. DERIEN-ROACH,    ) | |
|               ) | |
|       Plaintiff,      ) | |
|               ) | |
| v.                      ) | CV422-237 |
|               ) | |
| CHATHAM COUNTY,        ) | |
|               ) | |
|       Defendant.      ) | |

## REPORT AND RECOMMENDATION

Defendant Chatham County ("the County") moves for summary judgment in this Title VII gender-based discrimination action. Doc. 31; *see also* doc. 1 (Complaint). *Pro se* plaintiff Adrienne L. Derien-Roach responded, doc. 33, and the County replied, doc. 34. The County's Motion for Summary Judgment has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and is ripe for disposition. *See generally* docket.

## I.   BACKGROUND

Adrienne L. Derien-Roach began working for the Chatham County Department of Parks and Recreation as a Recreation Aid in 2014. *See*

doc. 31-3 at 16.[1]  In 2018, she was promoted to Recreation Leader.[2]  *Id.* at 16-17.  As a Recreation Leader, her duties included organizing and leading participants in recreation activities, planning events for senior citizens, teens, and children, helping with park maintenance, and maintaining the County's recreational facilities.  *Id.* at 26-28, 86.  From 2018 to early 2020, Derien-Roach's primary focus was on event planning.  *See id.* at 19-20.

In 2020, during the height of the COVID-19 Pandemic, Derien-Roach's responsibilities began to shift towards tasks associated more with the "parks" side of the department than the "recreation" side of the department.  Doc. 31-3 at 19-20.  She helped open and close the parks, patrolled the parks, checked park and stadium bathrooms to ensure they were stocked, and assisted with rentals.  *See id.* at 20, 27-28, 74.  In her 2020 Performance Appraisal, Derien-Roach expressed a desire to take Commercial Driver's License ("CDL") classes.  Doc. 33 at 9-10.  Though

---

[1]  The copy of Derien-Roach's deposition the County submitted in connection with its Motion for Summary Judgment is not certified.  *See* doc. 31-3 at 79-80; *see also* Fed. R. Civ. P. 30(f)(1).  The County has since provided a certified copy of the deposition to the Court.  *See* doc. 37.  Satisfied that the deposition complies with Rule 30 of the Federal Rules of Civil Procedure, the Court will cite to the version of the deposition included with the Motion for Summary Judgment for simplicity's sake.

[2]  As of June 2023, Derien-Roach was still a Recreation Leader with the Parks and Recreation Department.  *See* doc. 31-3 at 15.

she was not required to have a CDL as a Recreation Leader, Derien-Roach wanted to be able to pitch in at a time when the Parks and Recreation Department was short-staffed. *See* doc. 31-3 at 20-21, 46, 48. For example, while the Department had a lowboy trailer, there was no one qualified to drive it. *Id.* at 54. To obtain a CDL, she would need to pass a knowledge-based test to get a CDL permit, then practice for and pass a road skills test to obtain a full CDL. *Id.* at 56-57. Derien-Roach believed going through this process and getting a CDL would be helpful to the Department. *Id.* at 21, 54.

Derien-Roach's direct supervisor, Lorenzo Bryant, agreed. *See* doc. 31-3 at 46. At some point in early 2021, Bryant spoke with Leigh Herald, a Safety Training Manager for the County, about placing Derien-Roach in CDL classes. *See id.* at 47; *see also* doc. 33 at 19-20 (indicating that Byrant and Herald had spoken prior to April 19, 2021). The classes were meant to help County employees get their permits. Doc. 31-3 at 57. Derien-Roach also communicated directly with Herald. *See* doc. 33 at 15-21. Herald advised Derien-Roach that there were no CDL classes scheduled as of April 19, 2021, but that Derien-Roach could obtain a free

CDL manual from the Chatham County Department of Motor Vehicles ("DMV") and begin reviewing for her permit test. *Id.* at 19.

Derien-Roach did just that. Using the free CDL study materials from the DMV, she passed the requisite tests and, at some point prior to July 6, 2021, obtained a CDL Class A permit. *See* doc. 33 at 19. Though she already had her permit, Derien-Roach reiterated her desire to take any CDL classes the County might offer its employees to gain more knowledge and improve her chances of passing the road test. *Id.* The County did not schedule any CDL classes between July 6, 2021, and October 19, 2021. *See id.* at 16-18.

Derien-Roach did not sit idle while she waited to hear from Herald about County-sponsored CDL classes. She began practicing for her road skills test. Her supervisor, Bryant, reached out to William Wright, the Director of Public Works, to get Wright's permission to have someone in Public Works teach Derien-Roach how to operate Class A vehicles using Public Works' trucks. *See* doc. 33 at 19, 22, 34. Herald recommended Henry Edwards, an employee with Public Works, as a trainer. *See id.* at 35. Edwards trained Derien-Roach for her road skills test on Public Works equipment both during and after normal work hours. *See id.* at

23-25, 28, 35.  Bennie Page, an employee with Public Works, and Lisa Foley, the Superintendent of the Chatham County Public Works, worked with Derien-Roach to coordinate her and Public Works' schedules to ensure that she had the time and resources to properly train.  *See* doc. 33 at 23-24, 27-28, 35.  Superintendent Foley even offered the name of another Public Works employee who she believed would be a good trainer for Derien-Roach.  *Id.* at 27.  From early April 2021 to early November 2021, Derien-Roach received nothing but support for her CDL training from various departments within the County.  *See e.g., id.* at 17-22, 27-28.

On September 14, 2021, the County received an anonymous complaint for "abuse of county time and benefits" because Derien-Roach was being trained for her CDL license even though a CDL was not required by her job description.  Doc. 33 at 39.  The complaint alleged that Derien-Roach was "being paid" for her training.  *Id.*  While there is no indication that Derien-Roach received any kind of bonus or over-time pay for her practice sessions with Public Works, *see generally* docs. 31-3, 33, & 33-1, as stated above, she did train during work hours, *see* doc. 33 at 23-25, 28.

Stephen Proper, Director of the Chatham County Parks and Recreation Department, consulted with Human Resources regarding the complaint.  Doc. 33 at 41.  While Proper was aware that Derien-Roach was training for her CDL, he did not realize that Derien-Roach was training with "the County, on work time, and with [C]ounty equipment." *Id.* at 62.  On November 16, 2021, Proper emailed Bryant and informed him that Derien-Roach's CDL training needed to cease immediately because "[a] County Employee should be trained for the position they are in or a position they are going to be promoted to."  *Id.* at 41.  As a Recreation Leader, Derien-Roach did not need a CDL.  *See* doc. 31-3 at 48.   Bryant indicated that he would stop Derien-Roach's training immediately.  Doc. 33 at 41.  He informed Proper that Andy Rock, a Maintenance Supervisor, was also receiving CDL training, and that he would stop Rock's training too until further notice.  *Id.*  Proper asked another Parks and Recreation employee to investigate whether it was appropriate for Rock, as a Maintenance Supervisor, to receive CDL training.  *Id.*

Proper, Bryant, and two deputy directors met with Derien-Roach on November 23, 2021.  *See* doc. 31-3 at 59-60.  During the meeting,

6

Proper offered Derien-Roach a job as an Equipment Operator II.  *See id.* Unlike a Recreation Leader, an Equipment Operator II is required to have a CDL.  *See* doc. 33 at 62.  Pursuant to the County's policy that County employees are only trained for CDLs at the County's expense if their job or a job they are about to begin requires a CDL, if Derien-Roach accepted the position, she would be able to continue training with Public Works for her CDL road skills test.  *Id.* at 57, 62; *see also* doc. 31-3 at 60. She would continue to work under the umbrella of the Department of Parks and Recreation and would be hired at the same pay grade and hourly rate as her current position.  *See* doc. 33-1 at 11.

Derien-Roach was concerned that if she accepted a position that mandated she have a CDL but did not pass her CDL road skills test, she would be fired for not having a CDL.  Doc. 33 at 2; *see also* doc. 33-1 at 1. Rather than run the risk that she could lose her job if she did not obtain her CDL within a certain timeframe, she denied Proper's offer to become an Equipment Operator II.  *See* doc. 33 at 57, 62; doc. 33-1 at 1.  Because she remained in a position that did not require a CDL, the County prohibited Derien-Roach from preparing for her CDL road skills test using County equipment and with County instructors.  Doc. 33 at 62.  In

a letter dated December 7, 2021, Derien-Roach filed a grievance against Proper for "capricious interpretation of policies, procedures, rules, regulations, ordinances, or statutes that affect the employee" and requested she be allowed to finish her CDL training with County resources. *Id.* at 57-59. Proper did not uphold the grievance. *Id.* at 62. Derien-Roach appealed the decision on December 23, 2021, and requested that she be reimbursed by the County for the expenses she would incur by enrolling in a CDL course offered by Ogeechee Technical College. *See id.* at 63; doc. 33-1 at 1-2, 14.

The County denied Derien-Roach's appeal on March 30, 2022. Doc. 33-1 at 11-12. They also denied her request to be reimbursed for the costs associated with preparing for her CDL road test on her own. *Id.* at 12. However, the County offered Derien-Roach time-off to complete her course and take her CDL road test; offered to let her use one of its vehicle for her road skills test; and re-extended the offer to transfer her from Recreation Leader to Equipment Operator II so that she could actually use her CDL once she obtained it. *Id.* at 11-12. Derien-Roach ultimately obtained her CDL in May 2022. *Id.* at 60 (CDL Class A issued May 17, 2022).

8

Derien-Roach again declined the lateral transfer.  Doc. 33-1 at 13. She had come to believe that the decision to discontinue her training had not been made "in fairness or without bias."  *Id.*  While she had been appealing the decision to end her CDL training, Andy Rock, the Maintenance Supervisor who's CDL training Bryant halted in November, had been permitted to continue his training.  *See* doc. 31-3 at 53; *see also* doc. 1 at 4; doc. 33 at 2-3.  Rock had been a Maintenance Supervisor for years without needing a CDL.  Doc. 31-3 at 65.  Derien-Roach believed that a CDL was not required for Rock's position–just as a CDL was not required for her position.  *Id.* at 53; *see also* doc. 33 at 2-3.  Yet he had been allowed to continue CDL training while she had not.  Doc. 31-3 at 53.  On June 15, 2022, Derien-Roach filed a charge of discrimination with the EEOC alleging gender-based discrimination because a "male colleague was able to begin CDL training after [her] training was paused, even though [having a CDL] was outside of his job description."  Doc. 31-3 at 87.

After receiving her right to sue letter, *see* doc. 31-3 at 82-85, she filed the present action, *see* doc. 1.  Derien-Roach alleges that by training Rock for his CDL but not training her for her CDL, the County "treat[ed]

her less favorably than male employees, depriv[ed] her of economic opportunities by training male employees and not female employees at county expense, and prevent[ed] [her] from receiving the same fringe benefit on account of her sex" in violation of Title VII of the Civil Rights Act of 1964.  *See* doc. 1 at 4-6.  The County moves for summary judgment on the grounds that Derien-Roach has not produced any evidence of discrimination under Title VII.  *See generally* doc. 31-1.

At the time she filed her Complaint, Derien-Roach was represented by counsel.  *See generally* doc. 1.  She is now *pro se.  See* doc. 21 (granting prior counsels' request to withdraw).   Accordingly, the Court will construe her Response to the County's Motion for Summary Judgement, *see* doc. 33, liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## II.   LAW

### a.  Summary Judgment

Summary judgement "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

"material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of "identify[ing] the portions of the record that it believes show the absence of a genuine issue of material fact and . . . show[ing] that it is entitled to judgment as a matter of law." *Edmonson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022). When the nonmoving party has the burden of proof at trial, the moving party does not need to "support its motion [for summary judgment] with affidavits or other similar material *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis in original). The moving party may simply point to "an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B). "Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir.

1991); *see also* Fed. R. Civ. P. 56(c)(1)(A).  If the moving party identifies evidence in the record–or a lack of evidence–that shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  If the moving party does not meet its burden, then summary judgment should be denied.  *Edmondson*, 43 F.4th at 1160.

At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Accordingly, the Court will view the evidence and all reasonable inferences therefrom in the light most favorable to Derien-Roach as the nonmoving party.  *See Edmonson*, 43 F.4th at 1160 (citing *Anderson*, 447 U.S. at 255); *see also Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

b. <u>Title VII of the Civil Rights Act</u>

Title VII of the Civil Rights Act prohibits employers from discriminating against an employee with respect to her "compensation, terms, conditions, or privileges of employment" because of the employee's gender. 42 U.S.C. § 2000e-2(a)(1). At the summary judgment stage, a plaintiff may establish a prima facie case of gender discrimination under Title VII through: (1) direct evidence of discriminatory intent; (2) statistical evidence of disparate treatment; (3) circumstantial evidence that meets the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); or (4) circumstantial evidence that "presents a convincing mosaic of circumstance evidence that would allow a jury to infer intentional discrimination by the decision maker," *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal citations and quotations omitted). *See Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (holding that a plaintiff may use either direct or circumstantial evidence to show discrimination); *see also Mitchell v. Ga. Dep't of Corr.*, 2017 WL 1754769, at *4 (S.D. Ga. May 3, 2017); *Porter v.*

*City of Savannah, Ga.*, 2018 WL 2943448, at *3-*4 (S.D. Ga. June 12, 2018).

Under the *McDonnell Douglas* framework, to establish a prima facie case of discrimination, the plaintiff must show by a preponderance of the evidence that: (1) she belongs to a protected class; (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) her employer treated similarly situated employees outside her classification more favorably. *See Maynard v. Board of Regents of Div. of Univ. Of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). If the plaintiff makes this showing, the burden "shifts to the defendant to articulate some legitimate nondiscriminatory reason for the alleged discrimination. If the defendant produces such a reason, the plaintiff must then prove that the legitimate reason offered was a mere pretext for an illegal motive." *Mulhall v. Advance Sec. Inc.*, 19 F.3d 586, 597 (11th Cir. 1994) (internal citation and quotations omitted).

Establishing a prima facie case of discrimination using the *McDonnell Douglas* framework is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith*, 644 F.3d at 1328. Instead,

> [u]nder *McDonnell Douglas*, the failure to establish a prima
> facie case is fatal only where it reflects a failure to put forward
> enough evidence for a jury to find for the plaintiff on the
> ultimate question of discrimination.  This may mean that
> there was not enough evidence to infer discrimination.  Or it
> may be that there was no adverse employment action.  But
> the analysis turns on the substantive claims and evidence in
> the case, not the evidentiary framework.

*Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023); *see
generally id.* at 944-47 (describing the role of the *McDonnell Douglas*
framework as an evidentiary framework, not a liability standard, at the
summary judgment stage).  The *McDonnell Douglas* framework can help
answer the ultimate question in a discrimination case–"whether there is
enough evidence to show that the reason for an adverse employment
action was illegal discrimination"–but it cannot replace it.  *Id.* at 941-42.

As a result, a plaintiff who fails to establish a prima facie case of
discrimination under *McDonnell Douglas* may nevertheless survive
summary judgment by presenting "circumstantial evidence that creates
a triable issue concerning the employer's discriminatory intent." *Smith*,
644 F.3d at 1328.  "A triable issue of fact exists if the record, viewed in a
light most favorable to the plaintiff, presents a convincing mosaic of
circumstantial evidence that would allow a jury to infer intentional
discrimination by the decision maker."  *Id.* (internal quotations and

citations omitted).  The convincing mosaic "approach to analyzing the evidence treats an employment discrimination suit in the same way [a court] would treat any other case–jumping directly to the ultimate question of liability and deciding whether the moving party is entitled to judgment at that stage of the case." *Tynes*, 88 F.4th at 947.  To establish a convincing mosaic, a plaintiff may point to evidence that demonstrates, among other things: "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Jenkins*, 26 F.4th at 1250 (quoting *Lewis v. City of Union City, Ga. (Lewis II)*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

## III.  ANALYSIS

The County argues that summary judgment is appropriate because Derien-Roach has not presented any direct evidence of discrimination or established a prima facie case of discrimination under *McDonnell Douglas*.  *See* doc. 31-1 at 3-11.  It does not address whether Derien-Roach has presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker." *Smith*, 644 F.3d at 1328; *see generally* doc. 31-1.  To determine whether

16

there is a genuine issue for trial, *see Anderson*, 477 U.S. at 249, the Court has reviewed all of the evidence in the record, *see generally* docs. 31-1, 33, & 33-1. *See, e.g.*, Fed. R. Civ. P. 56(c)(3).

### A. Direct Evidence

There is no direct evidence of discrimination in this case. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (internal quotations and citations omitted). "As a result, 'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [some impressible factor]' will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990)). In an age discrimination case, for example, "direct evidence would be a management memorandum saying, "Fire [Plaintiff]–he is too old.'" *Earley*, 907 F.2d at 1081.

An example of direct evidence of gender-based discrimination in this case could be a County official saying, "Stop training Derien-Roach

for a CDL–we don't want women driving trucks."  But Derien-Roach has

not pointed to *any* statements made by her co-workers, supervisors, or

the County regarding her gender, much less any "blatant remarks, whose

intent could mean nothing other than to discriminate on the basis of" sex.

*Damon*, 196 F.3d at 1359 (internal quotations omitted); *see also* docs. 31-

3, 33, and 33-1.  Any discriminatory motive for the alleged disparate

treatment, if it exists, must be inferred from other evidence.

      B. <u>Statistical Proof</u>

      Derien-Roach waves at an argument rooted in "statistical proof," to

use the term loosely; she alleges there have been "many" male employees

in the Parks and Recreation Department who have been given permission

to train for a CDL, while she, the only female employee ever given

permission to train, had that permission revoked.  *See* doc. 33 at 3.  But

she offers no evidence to support this claim.  *See generally* docs. 33 & 33-

1.  To the extent statistics may be relevant to establishing a prima facie

case of discrimination when they show a pattern of discrimination,

Derien-Roach's completely unsupported claim that "many" men in her

department have been permitted to train for a CDL while no women have

cannot create a genuine issue of fact as to whether the County intended

to discriminate against her. *See Ward v. Gulfstream Aerospace Corp., Inc.*, 894 F. Supp. 1573, 1579-80 (S.D. Ga. 1995) (holding that insufficient statistical evidence cannot create a genuine issue of fact as to whether the employer intended to discriminate).

### C. Other Circumstantial Evidence

Without direct evidence or statistical proof of disparate treatment, Derien-Roach must use circumstantial evidence to establish a prima facie case of discrimination under *McDonnell Douglas* or to show that "[a] triable issue of fact exists [because] the record . . . presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker." *See Smith*, 644 F.3d at 1328. As previously stated, the County focuses its Motion for Summary Judgment exclusively on *McDonnell Douglas*. *See* doc. 31-1 at 3-11. There is no dispute that Derien-Roach, as a woman, is a member of a protected class, or that she is qualified for her position. *See generally* doc. 31-1. Instead, the County argues that Derien-Roach did not suffer an adverse employment action and was not treated less favorably than a similarly situated individual. *Id.* at 8-11.

"[T]he components of a prima facie case are not necessarily coextensive with the evidence needed to prove an employment discrimination claim." *Tynes*, 88 F.4th at 946. However, "the questions the plaintiff must answer to make a prima facie case are relevant to the ultimate question of discrimination." *Id.* (emphasis omitted). Beyond being one of the elements of a prima facie case of discrimination, an adverse employment action is a necessary element of a Title VII discrimination claim. *Id.* ("A plaintiff who fails to prove that she . . . suffered an adverse employment action, will be unable to prove that she was unlawfully discriminated against."); *see also Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012) ("[A]n adverse employment action is not only an element of the prima facie case, [cit.] but an element of the claim itself[.]" (internal citations omitted)). This is true under either *McDonnell Douglas* or the convincing mosaic framework. *See e.g.*, *Lackey v. La Petite Academy, Inc.*, 2020 WL 1285828, at *5 (N.D. Ala. Mar. 17, 2020) (holding that that a plaintiff must show that she suffered an adverse action to survive summary judgment under both frameworks); *Redding v. Fanning*, 2016 WL 6821098, at *2 n.5 (M.D. Ga. Nov. 17, 2016)

("[Plaintiff]'s failure to demonstrate an adverse employment action is fatal to his claim, regardless of the framework applied.").

Because it is a critical element of her claim, if there is no evidence that Derien-Roach suffered an adverse employment action, then, as a matter of law, she will have "fail[ed] to put forward enough evidence for a jury to find for [her] on the ultimate question of discrimination." *Tynes*, 88 F.4th at 947. The County would be entitled to summary judgment. *See Anderson*, 477 U.S. at 248-49. Accordingly, the Court will begin by considering whether the evidence put forth by the parties demonstrates that Derien-Roach suffered an adverse employment action, or if there is a genuine dispute as to whether Derien-Roach suffered an adverse employment action.

An adverse employment action is a "*serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original), *overruled on other grounds by*

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  In the disparate treatment context, adverse employment actions "consist of things that affect continued employment or pay–things like terminations, demotions, suspensions without pay, and pay raises or cuts–as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay U.S., Inc.*, 955 F.3d 855, 860 (11th Cir. 2020).  Denial of training can be an adverse employment action if the plaintiff establishes that her employer denied her *material* training opportunities.  *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1436 n.16 (11th Cir. 1998) (holding that denial of material training opportunities is an adverse employment action in the age-based discrimination context).  Courts in this circuit have found that a training opportunity is material when the lack of training interferes with the plaintiff's ability to do her job or causes the denial of a promotion, bonus, or other tangible benefit.  *See, e.g.*, *Johnson v. Gestamp Ala., LLC*, 946 F. Supp. 2d 1180, 1202 (N.D. Ala. 2013); *Merriweather v. Ala. Dep't of Pub. Safety*, 17 F. Supp. 2d 1260, 1270-71 (M.D. Ala. 1998); *Bullock v. Widnall*, 953 F. Supp. 1461, 1473 (M.D. Ala. 1996).

The County prohibited Derien-Roach from preparing for her CDL road skills test using County equipment, with County instructors, and during work hours, so long as she remained in her current position. *See* doc. 33 at 62. Had she accepted a lateral transfer to the Equipment Operator II position at the same pay grade and hourly rate as her current position, the County would have allowed her to prepare for her CDL road skills testing using its equipment and instructors. *See id.*; *see also* doc. 31-3 at 88. After Derien-Roach declined to transfer to a position that required a CDL and would have qualified her to use County resources to prepare for the road test, the County denied her December 23, 2021 request to be reimbursed for the costs associated with privately obtaining her CDL. *See* doc. 33-1 at 11-12. To the extent the County offers formal CDL classes in place of or in addition to the kind of one-on-one practice sessions Derien-Roach did with the Public Works Department, there is no evidence in the record that such a class was held during the relevant timeframe and that Derien-Roach was prohibited from attending the course. *See* doc. 33 at 16-21 (correspondence between Derien-Roach and Herald indicating that there was no formal CDL class being offered between April 2021 and October 2021); *see also* doc. 31-3 at 56-57. The

question, therefore, is whether denying Derien-Roach access to County resources to practice for her CDL road skills test while she was in a position that did not require a CDL and failing to reimburse her for the costs she incurred in preparing for her CDL on her own constitute adverse employment actions.

There is no evidence in the record that denying Derein-Roach access to County resources to practice for her CDL road skills test or refusing to reimburse her for costs associated with privately obtaining her CDL denied her a "material" training opportunity. *See generally* docs. 31-3, 33, & 33-1; *see also Turlington*, 135 F.3d at 1436 n.16. The record does not indicate that the County's failure to support Derien-Roach's CDL training interfered with her ability to do her job or caused the denial of a promotion, bonus, or other tangible benefit. *See Johnson*, 946 F. Supp. 2d at 1202; *Merriweather*, 17 F. Supp. 2d at 1270-71; *Bullock*, 953 F. Supp. at 1473. As Derien-Roach's own testimony reveals, Recreation Leaders are not required to have a CDL. *See* doc. 31-3 at 48. Because her job does not require a CDL, the County's refusal to use its resources to prepare her to obtain a CDL could not have interfered with her ability to do her job, and Derien-Roach does not allege that it did. *See generally*

doc. 1.   She alleges generally that she was deprived of "economic opportunities" by not being trained for a CDL at the County's expense, *see* doc. 1 at 6, but does not point to any lost bonuses, salary increases, pay grade increases, or other tangible financial benefits that she missed out on because the County did not use its resources to train her, *see generally* docs. 31-3, 33, & 33-1.   Similarly, while the record shows that obtaining a CDL may open the door to *lateral* moves within the Parks and Recreation Department, *see e.g.*, doc. 33-1 at 11 (offering Derien-Roach a lateral move into a position with the same hourly rate/annual salary), there is no evidence that the County's failure to use its resources to support Derien-Roach's CDL training impacted her chances of being *promoted* from Recreation Leader to another position, *see generally* docs. 31-3, 33, & 33-1.

Having a CDL may make Derien-Roach a real asset to the Department of Parks and Recreation and to the County as a whole.  *See* doc. 33 at 62 (letter from Stephen Proper noting that it would be "mutually beneficial" for Derien-Roach to train for a CDL if she had a position where she would use a CDL).  But there is no evidence in the record that being trained for a CDL at the County's expense was *material*

to her employment or that she lost any specific opportunities because the County did not support her training. *See Johnson*, 946 F. Supp. 2d at 1202 (requiring a plaintiff to cite to evidence showing that a training was material to his employment or that denial of the training cost him specific opportunities); *see generally* docs. 31-3, 33, & 33-1. Obtaining a CDL may have been useful, but it was not necessary. The County did not subject Derien-Roach to a "*serious and material* change in the terms, conditions, or privileges of employment," *Davis*, 245 F.3d at 1239; it simply declined to lend its resources to help Derien-Roach obtain a credential she did not need for her job. A reasonable person in the circumstances would not view that as a materially adverse employment action. *See id.*; *see also Turlington*, 135 F.3d at 1426 n.16. Derien-Roach has therefore failed to establish that she suffered an adverse employment action.

The Court need not consider the parties' arguments regarding whether Derien-Roach was treated less favorably than a similarly situated male employee. Without an adverse employment action, Derien-Roach cannot succeed on her disparate treatment claim, regardless of whether the Court analyzes the evidence using the *McDonnell Douglas* framework or the convincing mosaic framework. *See e.g.*, *Lackey*, 2020

WL 1285828, at *5; *Redding*, 2016 WL 6821098, at *2 n.5 (M.D. Ga. Nov. 17, 2016). "A plaintiff who fails to prove that she . . . suffered an adverse employment action[] will be unable to prove that she was unlawfully discriminated against." *Tynes*, 88 F.4th at 946.

Because an adverse employment action is an essential element of her Title VII claim, *see Holland*, 677 F.3d at 1056, without one, no jury could find in Derien-Roach's favor. Awarding summary judgment to the county is therefore appropriate; there is no genuine issue for trial. *See Anderson*, 477 U.S. at 248-49. Accordingly, The County's Motion for Summary Judgment should be **GRANTED**. Doc. 31.

## IV.   CONCLUSION

There is no evidence in the record that denying Derien-Roach access to County resources to practice for her CDL road skills test while she was in a position that did not require a CDL and failing to reimburse her for the costs she incurred in preparing for her CDL on her own denied her a material training opportunity. As such, there is no evidence that Derien-Roach suffered an adverse employment action. *See Turlington*, 135 F.3d at 1436 n.16; *see also Johnson*, 946 F. Supp. 2d at 1202; *Merriweather*, 17 F. Supp. 2d at 1270-71; *Bullock*, 953 F. Supp. at 1473. "A plaintiff who

fails to prove that she . . . suffered an adverse employment action[] will be unable to prove that she was unlawfully discriminated against" at trial.   *Tynes*, 88 F.4th at 946.   Therefore, the County's Motion for Summary Judgment should be **GRANTED**.   Doc. 31.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.   11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 10th day of July, 2024.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA